THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**NIAGARA BOTTLING, LLC**

    Plaintiff,

    v.

**CC1 LIMITED PARTNERSHIP D/B/A COCA-COLA PUERTO RICO BOTTLERS**

    Defendant

CIVIL NO. 18-1414 (DRD)

RE: TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; BREACH OF CONTRACT; DAMAGES

## MOTION TO DISMISS

**TO THE HONORABLE COURT**:

    **COMES NOW** the CC1 Limited Partnership d/b/a Coca-Cola Puerto Rico Bottlers ("CC1"), through the undersigned counsel, and without submitting to the Court's jurisdiction, respectfully alleges and prays:

### I. INTRODUCTION

    Plaintiff, Niagara Bottling, LLC ("Plaintiff"), filed this Complaint against CC1 on June 26, 2018, alleging trademark infringement pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(a), unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), breach of contract, and breach of the covenant of good faith and fair dealing under the laws of Puerto Rico. See Docket No. 1. In this action, Plaintiff seeks permanent injunctive relief and damages arising out of CC1's alleged continuing infringement of Plaintiff's marks and willful breach of a Settlement Agreement executed by the parties. Id.

    The thrust of Plaintiff's Complaint is that, in violation of the terms of a Settlement Agreement between CC1 and Plaintiff, CC1 continued to use a mark confusingly similar to Plaintiff's marks in connection with the products CC1 sales under the "Nikini" trademark in Puerto Rico, causing consumers in Puerto Rico to be misled and deceived into believing that

1

Nikini's products are produced, authorized, licensed by or originated from Plaintiff. Notably, Plaintiff bases all its allegations as to the alleged breach of the Settlement Agreement on communications between attorneys *during settlement negotiations* included as exhibits to the Complaint - a clear violation of Rule 408 of the Federal Rules of Evidence. Therefore, said allegations and communications must be stricken from the Complaint. Furthermore, Plaintiff does not allege a **single** fact to establish **any** relevant connection between its marks and Puerto Rico, the specific market where it acknowledges that CC1 sells its Nikini products and where the purported confusion between Plaintiff's marks and the Nikini mark occurs. Indeed, plaintiff does not allege that it uses or has used its marks in Puerto Rico. Nor does it allege any other facts from which this Court could draw **any** inference of a plausible likelihood of confusion in Puerto Rico consumers as a consequence of CC1's purported use of the alleged infringing marks in Puerto Rico. Therefore, as discussed in further detail below, the threadbare allegations in the Complaint are simply insufficient to state a single claim for relief and the Complaint should be dismissed in its entirety.

## II.   STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, the court determines "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). However, a court will "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014). The court should also ensure that the pleading requirements of Fed. R. Civ. P. 8(a)(2) are satisfied. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). Therefore, "[t]o survive a motion to dismiss, a complaint must 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). A claim is "plausible" only if a plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (alteration in the original) (quoting *Twombly*, 550 U.S. at 557). In sum, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quotation marks omitted).

### III. DISCUSSION

#### A. FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff filed this Complaint against CC1 alleging trademark infringement and unfair competition in violation of Sections 35 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1141(1) and 1125(a), breach of contract, and breach of the covenant of good faith and fair dealing. Briefly stated, Plaintiff alleges in the Complaint that it registered in the U.S. Patent and Trademark Office (U.S.P.T.O.) the trademarks "Eco-Air Bottle" and "Eco-Air Package", which it uses in connection with the Niagara trademark for bottled drinking water. See Docket No. ¶9. Plaintiff further alleges that it also owns the common law rights in other marks (the "Logo Mark"), which it uses in connection with the advertising, marketing, and

sale of its drinking water products since the year 2010. Id. ¶13. The Logo Mark consists of the "Eco-Air Bottle" or the "Eco-Air Package" word marks and certain design marks. Id. ¶14.

Plaintiff recognizes in its Complaint that CC1 sells bottled drinking water in Puerto Rico and the U.S. Virgin Islands, U.S.V.I., bearing the trademark "Nikini". Id. ¶¶15-16. Plaintiff alleges that CC1 coined the phrase "New Eco-Earth Bottles", which it used in connection with bottled drinking water sold under the "Nikini" trademark. Id. ¶17. Plaintiff conclusively alleges that the use of the "New Eco-Earth Bottles" phrase by CC1 in the Nikini water bottle was confusingly similar to the "Eco-Air Bottle" and "Eco-Air Package" used by Plaintiff in connection with its Niagara water. Id. ¶17. Similarly, Plaintiff conclusively alleges that CC1 adopted a design that was practically identical to Plaintiff's Logo Mark (the "CC1 Design"). Id. ¶17. Moreover, it further conclusively alleges that CC1's use of the "New Eco-Earth Bottles" phrase and the "CC1 Design" would mislead and deceive consumers into believing that Nikini's products are produced, authorized, licensed by or originated by Plaintiff. Id. ¶21. However, notably absent from Plaintiff's Complaint, however, is any factual allegation as to its use of the "Eco-Air Bottle" and "Eco-Air Package" in connection with Niagara water sold in Puerto Rico or the U.S.V.I.-the two specific markets where Plaintiff itself recognizes CC1 sells its Nikini water.

Plaintiff alleges that it requested that CC1 voluntarily cease use of the "New Eco-Earth Bottles" phrase and the "CC1 Design" and that CC1 agreed as per the terms of a Settlement Agreement effective January 3, 2017 included as Exhibit E to the Complaint. Id. ¶¶ 22-23. Per Plaintiff's allegations, after the parties had executed the Settlement Agreement, it found a bottle of Nikini water with the "New Eco-Earth Bottles" phrase in a Sam's Club in Puerto Rico. See Exhibit F, Docket No. 1-6. Plaintiff then alleges that CC1 manufactured, distributed, and sold Nikini bottles with the "New Eco-Earth Bottles" phrase in Puerto Rico after the phase-out period contemplated in the Settlement Agreement. See Docket No. 1 ¶33.

Such allegation, however, is based on an email exchange between attorneys *as part of settlement negotiations*. Said emails cannot be used as exhibits to the Complaint or for any evidentiary purpose. See Exhibits F and H, Docket Nos. 1-6, 1-8. Plaintiff further conclusively concludes that CC1–knowingly, intentionally, deliberately, and in bad faith– continued to infringe Plaintiff's trademarks in conscious disregard of Plaintiff's intellectual property rights and the terms of the Settlement Agreement. See Docket No. 1 ¶34.[1] However, as expressly stated in the Complaint, such allegation is grounded on the alleged actions by CC1 described in Paragraphs 27 through 35 of the Complaint, which are also based on communications between attorneys *as part of settlement negotiations* and which could not be used as an exhibit to the Complaint or for any evidentiary purpose. Id. ¶¶ 27-35 and the exhibits referenced to therein.

Indeed, as discussed in further detail below, the central allegations in the Complaint and upon which Plaintiff relies to bring this action are essentially based on the communications between attorneys *for settlement negotiations purposes*, which Plaintiff improperly included as exhibits to the Complaint or improperly recited the content of such communications in its allegations.

### B. PLAINTIFF'S COMPLAINT AND EXHIBITS SHOULD BE STRICKEN FOR VIOLATING RULE 408 OF THE FEDERAL RULES OF EVIDENCE

Rule 408 of the Federal Rules of Evidence prohibits the introduction of settlement offers or conduct and statements made during the course of settlement negotiations to prove or disprove the validity or amount of a disputed claim. *See* Fed. R. Evid. 408.[2] The first

---

[1] Such allegation is a conclusion of law which must be disregarded when analyzing the sufficiency of the pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure.
[2] Federal Rule of Evidence 408, titled "Compromise and Offers to Compromise" provides, in relevant part, as follows:
   (a) Prohibited uses. Evidence of the following is not admissible–on behalf of any party–either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
      (1) furnishing, promising, or offering–or accepting, promising to accept, or offering to accept–a valuable consideration in compromising or attempting to compromise the claim; and

sentence of Rule 408(a) states that compromise evidence is not admissible "on behalf of any party." Fed. R. Evi. 408(a). "The rule thus makes clear that Rule 408 excludes compromise evidence even when the party seeks to admit either its own settlement offer or statements made in settlement negotiations or evidence of a third party's settlement offer or settlement statements." S. Goode, COURTROOM HANDBOOK ON FEDERAL EVIDENCE (2016), p. 307. Furthermore, as this Court explained:

> Because the rule is designed to encourage settlement negotiations after a controversy has actually arisen, its applicability depends on the timing of an offer and the existence of a disputed claim. […] And a settlement offer may be used to show an independent violation … unrelated to the underlying claim which was the subject of the correspondence. Ultimately, courts should eschew a strict reading of the word 'claim,' and apply Rule 408 in accordance with its purpose, ***barring settlement evidence so long as the legal claim in the controversy arises out of the same transaction or event as the claim at issue during the settlement negotiations***.

*Moreta v. First Transit of PR, Inc.*, 39 F. Supp. 3d 169, 176–77 (D.P.R. 2014) (internal quotation marks and citations omitted).

A motion to strike the material contained in pleadings is governed by Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) authorized courts to "strike redundant, immaterial, impertinent or scandalous" material from the complaint. *See* Fed. R. Civ. P. 12(f). Although Rule 408 is a rule of evidence, courts often apply Rule 408 to strike allegations and material from the pleadings. *See Ciolli v. lravani*, 625 F.Supp.2d 276, 285-86 (E.D. Pa. 2009) (applying Rule 408 to strike allegations in plaintiff's complaint that clearly disclose the substance of settlement negotiations); *Geary v. Motel Props., Inc.*, 2006 WL 1344015 *1 (S.D. Ind. 2006) ("This court is of the belief that allowing the use of compromise materials in pleadings runs against the intent of F.R.E. 408 to encouragement settlement discussions at all points of a dispute."); *Fidelity National Title v. Co. v. Law Title Insurance*, 2005 WL 1126899 at *5-7 (N.D. Ill. 2005) (granting a motion to strike a letter attached to the

---

(2) conduct or statements made during compromise negotiations about the claim– except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

complaint as exhibit and paragraph in the complaint that in which letter the letter is discussed on Rule 408 grounds); *U.S. v. Centracare Health Syst., Inc.*, 2002 WL 1285089 at *2 (D. Minn. 2002) ("courts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408."); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992) (granting motion to strike paragraphs in complaint that refer to settlement negotiations); *Braman v. Woodfield Gardens Assocs. Realcorp Investors I*, 715 F. Supp. 226, 230 (N.D. Ill. 1989) (granting motion to strike based on Rule 408 where a contrary conclusion would undermine the Rule's purpose encouraging settlement negotiations).

As previously noted, the central allegations in the Complaint regarding breach of contract are based on communications between attorneys *as part of settlement negotiations*. Such settlement negations were initiated by Plaintiff on **July 5, 2017** with the letter expressly referred to in Paragraph 28 of the Complaint, id. ¶28, and included as Exhibit F to the Complaint. See Exhibit F, Docket No. 1-7. Although the Complaint does not explicitly state that such communications were part of the settlement negotiations, Plaintiff alleges that in July 5, 2017, it sent a letter to CC1:

> [R]eminding it that refraining from future infringement of [Plaintiff's] Marks after the phase-out period… was a *sine qua non* requirement, the non-compliance of which constitutes a material breach of the Agreement. [Plaintiff] also "demanded that CC1 immediately cease and desist from continuing its deliberate infringement of [Plaintiff's] Marks within (14) days or it would be force to seek legal action.

See Docket No. 1 ¶28.

That allegation is immediately followed by a reference to such letter as Exhibit F of the Complaint which, in turn, explicitly and unambiguously states at the beginning: **"CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY – SUBJECT TO FRE 408 AND ALL SIMILAR RULES."** See Exhibit F, Docket No. 1-6. As such, by July 2017, CC1 and Plaintiff had between them a concrete dispute regarding CC1's alleged infringement of Plaintiff's marks and breach of the Settlement Agreement. Therefore, in addition to the

July 2017 letter, all other communications between the parties attempting to resolve such disputes squarely fall within the scope of Rule 408 protections. These communications are the ones included as Exhibits G and H of the Complaint, which Plaintiff basically mirrored in the allegations of the Complaint.

Plaintiff is unequivocally using the substance of the settlement negotiations exclusively for the purpose of proving the validity of its claims, as if the settlement negotiations could be used as admissions of liability. See Docket No. 1 ¶45 ("Notwithstanding CC1's purported voluntary cessation… there is a substantial possibility that CC1 could resume use of the Infringing Mark, based on its **admitted failure to comply with obligations under the Settlement Agreement**."); ¶55 ("there is a substantial possibility that CC1 could resume use of the Infringing Mark, **based on its admitted failure to comply with obligations under the Settlement Agreement**…"); ¶59, *compare with*, Exhibits G and H, Dockets No. 1-7 and 1-8

In sum, in attaching the Rule 408 communications as exhibits to the Complaint, and reciting the content of such communications in its allegations, Plaintiff has violated the letter and the spirt of Rule 408. CC1 would be prejudiced if said allegations and Exhibits are not excluded because they would have the unjustifiable effect of raising improper inferences of liability. As such, the facts in this case warrant the striking of Paragraphs 27-33, 35, 45, 55, 59, 67 of the Complaint, as well as Exhibits F, G, and H to the Complaint. Any other result would undermine the policy and objective of Rule 408.

**C. PLAINTIFF'S CLAIMS FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION FAIL AS A MATTER OF LAW**

Trademark infringement claims may be brought under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for registered marks, or Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), for unregistered marks ("false association" claims).[3] To state a valid claim

---

[3] "A claim for infringement of an unregistered mark *must* be asserted under Lanham Act § 43(a)(1)(A), as what the Supreme Court has referred to as a claim for 'false association.' An infringement (or "false association")

for trademark infringement under the Lanham Act, a plaintiff must show two elements: "(1) the trademarks are 'entitled to trademark protection,' and (2) 'the allegedly infringing use is likely to cause consumer confusion.' " *Bose Corp. v. Ejaz*, 732 F.3d 17, 26 (1st Cir. 2013) (quoting *Bos. Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 12 (1st Cir. 2008) (trademark infringement action under 15 U.S.C. §1114)); *see also Oriental Fin. Group, Inc. v. Cooperativa de Ahorro Crédito Oriental*, 698 F.3d 9, 16 (1st Cor. 2012) (same) (action under § 1125). Thus, in a trademark infringement claim under either provision, a plaintiff is required to show *both* validity and infringement –although unaided by any presumption in infringement of unregistered marks (or "false association") claims under Section 43(a)(1)(A).

Courts apply the same infringement standard when analyzing claims under either section of the Lanham Act. Therefore, an infringement claim under either provision is "subject to the same legal standard –namely, 'likelihood of confusion…' " *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 61 n. 6 (1st Cir. 2008) (citation omitted); *Jordan K. Rand, Ltd. v. Lazoff Bros.*, 537 F. Supp. 587, 595 (D.P.R. 1982) ("It is well settled that likelihood of confusion is an essential element of both the claim for trademark infringement and unfair competition."); New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979) ("[U]nder the Lanham Act [§ 43(a)] the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. … Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion'?"); 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:1 (5th ed.):

> Infringement of federally registered marks is governed by the test of whether the defendant's use is likely to cause confusion, or to cause mistake, or to deceive. A federal claim under Lanham Act § 43(a) for infringement of an unregistered mark is triggered by a use which is likely to cause confusion, or

---

claim cannot be re-packaged as a false advertising claim in order to avoid having to prove trademark validity." 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:14 (5th ed.).

to cause mistake, or to deceive as to the affiliation, connection, or association' of the user with the senior user.

Likelihood of confusion requires "more than a theoretical possibility of confusion." *Boston Duck Tours, LP*, 531 F.3d at 12 (internal quotation marks and citation omitted); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:3 (5th ed.) ("Likelihood of confusion is synonymous with 'probable' confusion—it is not sufficient if confusion is merely 'possible.' ") To be probable rather than possible, "the allegedly infringing conduct must create a 'likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.' " *Boston Duck Tours, LP*, 531 F.3d at 12 (quoting *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996)).

### i. Plaintiff Has Not Entered the Puerto Rico Market

Under the *Dawn Donut* rule, established in the Second Circuit's landmark case defining the territorial rights for a mark registered under the Lanham Act *Dawn Donut Co. v. Hart's Foods Stoners, Inc.*, 267 F.2d 358 (2d Cir. 1959), while a senior federal registrant has superior priority, there is no likely confusion for a court to enjoin unless and until the senior user shows a likelihood of entry into the junior's trade territory. Until the registrant's likely entry, there is no likelihood that customers in that territory will be faced with two products or services marketed under confusingly similar marks. *See Snelling & v. Snelling, Inc. v. Snelling & Snelling*, 331 F.3d 750 (D.P.R. 1970) (federal registrant had not entered the Puerto Rico market; complaint dismissed).

Consequently, while the registrant has a nationwide *right*, its *remedy* does not ripen until the registrant shows a likelihood of entry into the disputed territory. *See* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:34 (5th ed.); *What-A-Burger Of Virginia, Inc. v. Whataburger, Inc.*, 357 F.3d 441, 447 n.4 (4th Cir. 2004) ("[T]here is a distinction between the rights that flow from ownership and the remedies including the owner's right to

enjoin another person' use of a mark that ripen only when there is a likelihood of confusion."). Once the senior user-federal registrant shows a likelihood of entry, it is entitled to an injunction against the junior user of a conflicting mark in that territory. "That is, a likelihood of confusion flows directly from the proof of likelihood of entry by the registrant. In such a case, a likelihood of entry must be alleged in the complaint. If it is not, the complaint will be dismissed for failure to state a claim." 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:34 (5th ed.)

While the Complaint alleges Plaintiff's registration of the "Eco-Air Bottle" and "Eco-Air Package," it fails to allege that any such marks were or are being used in Puerto Rico or the U.S.V.I, where Plaintiff alleges CC1 has used the "Eco-Earth Bottles" phrase along with the Nikini trademark. Plaintiff makes no attempt to establish any relevant connection between its trademarks and the Puerto Rico market. The Complaint does not allege a single fact regarding Plaintiff's entry or likelihood of entry to the Puerto Rico market. Nor does Plaintiff make a single allegation about the perception, association, or any relation whatsoever, between its marks and the Puerto Rico market. In the absence of any use of its marks in the Puerto Rico market or any connection between Plaintiff's marks and the Puerto Rico market, it follows that there is no likelihood that the customers in the Puerto Rico market would be confused by CC1's use of the "New Eco-Earth Bottles" or the "CC1 Design" in Puerto Rico. As such, this Court should dismiss Plaintiff's claim for trademark infringement.

With respect to unregistered marks, "the geographic area in which an unregistered trademark is 'in use' is defined as the area in which the use of similar mark would create a likelihood of confusion." *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 64 (1st Cir. 2013). Plaintiff also fails in this inquiry. The Complaint does not contain a single allegation regarding any use, at any time, by any person, of Plaintiff's unregistered "Logo Mark" in the

11

Puerto Rico market. Nor does the Complaint allege a single fact regarding the perception, secondary meaning, or association of the "Logo Mark" in the Puerto Rico market. In the absence of any use of Plaintiff's marks within the geographic demarcation of Puerto Rico, CC1's use of the "New Eco-Earth Bottles" phrase or "CC1 Design" in Puerto Rico cannot create any likelihood of confusion in the consumers of the Puerto Rico market. Therefore, this Court must dismiss Plaintiff's cause of action for unfair competition under the Lehman Act.

### ii. Plaintiff Does Not Satisfy the *Pignons* Factors

In the First Circuit, the courts consider eight factors, known as the "*Pignons factors*", in assessing whether defendant's alleged infringing use of the mark is likely to cause confusion:

> (1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

*See Dorpan, S.L.*, 728 F.3d at 65. "A proper analysis takes cognizance of all eight factors but assigns no single factor dispositive weight." *Boriquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 121 (1st Cir. 2006).

While the fact that the trademarks at issue were not used in the same market dooms any possibility of establishing a likelihood of confusion, the fact remains that Plaintiff would be unable to prevail in any event because it cannot establish the *Pignons factors*.

*Similarity of the Marks*

"Similarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987) (internal quotation marks and citation omitted); *see also Pignons S.A. v. Polaroid*, 657 F.2d 482, 487 (1981) (considering additional, source-identifying words printed on the goods and substantial different packaging). "The degree of

similarity between two marks… is determined by analyzing their sight, sound, and meaning." *Boston Duck Tours, LP*, 531 F.3d at 24.

Plaintiff claims that there would be likely confusion (assuming coexistence in a same market) between "Eco-Air Bottle" and "Eco-Air Package", on the one hand, and "Eco-Earth Bottles". But, these are composite phrases that overall are different and have different designs associated with them. Moreover, Plaintiff cannot rely on the common element of "Bottle" because Plaintiff disclaimed any right over such part of the mark, see Exhibit A, Docket No. 1-1 ("NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BOTTLE"); Exhibit B, Docket No. 1-2 ("NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BOTTLE"), and further, bottle is merely a generic term. *See Boston Duck Tours, LP*, 531 F.3d at 24 (finding that the owner of the mark BOSTON DUCK TOURS for amphibious tours in Boston did not have a likelihood of success against a competitor using the mark SUPER DUCK TOURS because the designation "duck tours" was a generic name for this kind of tour). And the common "eco" term is clearly distinguished by the overall wording and impression caused by "Eco-Earth", which is different from "Eco-Air". In any event, moreover, "eco" is a very weak term and the coincidence of such a weak term in a composite mark that causes an overall different commercial impression cannot be used as a basis for a finding of infringement. *See* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:58 (5th ed.) ("If the common element of conflicting marks is a word that is 'weak' then this reduces the likelihood of confusion.")

It is also imperative to consider that the overall commercial impression in both Plaintiff's and Defendant's case cannot be limited to the "Eco-Air Package" or "Eco-Earth Bottle" phrases. After all, these are phrases that appear in small print as mere auxiliaries to what is the key trademark: Nikini, in CC1's case, and Niagara, in Plaintiff's case. It cannot be seriously argued that the overall commercial impression caused by the Nikini trademark,

which combines words from pre-columbine languages in distinctive thick lettering, with a prominent slogan "the spirit of the Earth" and a related (to the slogan) notice that the bottle is eco-friendly ("Eco-Earth") is similar to the overall designation of the Niagara and "Eco-Air Package"/"Eco-Air Bottle" phrasing, with its thin lettering and prominent water drop design as part of the "g". See Docket No. 1 ¶13 (images of Plaintiff's marks), ¶16 (images of CC1's marks).

In light of the foregoing, Plaintiff failed to establish similarity of the marks.

*Similarity in Advertising Channels, Trade Channels, and Consumers*

Far from pleading any facts showing any similarity between Plaintiff's and CC1's customers or trade channels, Plaintiff simply parrots the language of the *Pignon Factors*, alleging only that "CC1 offers its products to the same customers" as Plaintiff, and that CC1 and Plaintiff offer their goods in the same channels of trade. See Docket No. 1 ¶18. *See* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:51 (5th ed.) ("Relevant to issue of likelihood of confusion is the consideration of how and to whom the respective goods of the parties are sold. 4 That is, are both products sold in the same channels of trade?") As to advertising channels, the Complaint simply does not allege that the advertising channels of Plaintiff and CC1 are similar. Indeed Plaintiff does not even mention which are their advertising channels in Puerto Rico. Although Plaintiff alleges that it is CC1's competitor, it does not does not even mention which are its Puerto Rico customers for Niagara water; nor which are its channels of trade in Puerto Rico for its Niagara water. Plaintiff does not allege any fact from which a reasonable interference of similarity or overlap between Plaintiff's and CC1's customers, advertising channels, and channels of trade, can be drawn. 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:13 (5th ed.) ("Confusion, or the likelihood of confusion, not competition, is the real test of trademark infringement.").

In any event, given that Plaintiff did not even allege facts that would establish that it sells its Niagara bottles with "Eco-Air Package"/"Eco-Air Bottle" phrasing in Puerto Rico, it is impossible for it to be using the same channels of trade and advertising to reach the same consumers as CC1's. CC1's consumers are in Puerto Rico  Absent allegations that Niagara water with the alleged trademarks is sold in Puerto Rico ., there simply is no coincidence as to channels of trade/advertising, or consumers. Therefore, Plaintiff also failed to establish this factor.

*Strength of the Plaintiff's Mark.*

Trademark strength is a product of both conceptual and commercial strength. *Conceptual strength* "depends on placement of a mark on the spectrum of distinctiveness." 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:73 (5th ed.) *Commercial strength* "turns on the degree of public recognition of the mark." *Id.* The test for *commercial strength* is the actual customer recognition value of the mark at the time registration is sought or at the time is asserted in litigation to prevent another's use." *Id.* at § 11:38. However, "[a]s infringement is measured by the likelihood of confusion of the relevant customer group, so also is trademark 'strength' measured by consumer perception." *Id.* at § 11:73. Some factor used to determine a mark's strength are: the length of time a mark has be used, the plaintiff's and the mark's renown in their fields, and the plaintiff's actions in promoting the mark.

Plaintiff made no factual allegations that would establish the strength of the "Eco-Air Package"/"Eco-Air Bottle", as opposed to the *Niagara* trademark. Indeed, the alleged trademarks over which Plaintiff is suing are, at best, auxiliary or secondary to the "Niagara" trademark and in any event they are inherently weak. Plaintiff disclaimed significant portions of these trademarks in its registrations.

Furthermore, if the common element of conflicting marks contains a word that is "weak" then this reduces the likelihood of confusion. "A portion of a mark may be 'weak' in the

sense that such portion is descriptive, highly suggestive, or is in common use by many other sellers in the market." 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:48 (5th ed.). "ECO" is a very weak mark since it is a commonly used mark and is highly descriptive of environmentally friendly products, services or practices. *See* D. Aledman, *Trademarks and Private Environmental Governance*, 93 NOTRE DAME L. REV. 709, 710 (2018) ("'green trademarks'—or 'ecolabel'—convey information about the sustainability of production and manufacturing processes, the environmental impacts of commercial operations, and the safety of materials in end-products."). Eric L. Lane, *Consumer Protection In The Eco-Mark Era: A Preliminary Survey and Assessment of Anti-Greenwashing Activity and Eco-Mark Enforcement*, 9 J. MARSHALL REV. INTELL. PROP. L. 742, 744 (2010) ("From 2007 to 2008 the number of applications for marks containing "GREEN" rose another 32% to more than 3,200, with instances of other common eco-mark elements like "CLEAN," "ECO", and "ENVIRO" also seeing substantial increases."). Given that Plaintiff's marks are very weak, this is yet another factor that Plaintiff cannot establish.

### D. PLAINTIFF'S BREACH OF CONTRACT CLAIM AND COVENANT OF GOOD FAITH AND FAIR DEALING FAIL AS A MATTER OF LAW

#### A. Plaintiff's Breach of Contract Claim Fails a Matter of law

Under Puerto Rico law, the elements of a cause of action for breach of contract are: 1) a valid contract; and 2) a breach by one of the contracting parties. *See Markel American Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 31 (1st Cir. 2012) (citing *Dantlzer, Inc. v. Lamas-Besos*, 2010 WL 2572618, at * 3 (D.P.R. 2010)). Further, "[i]n order for a nonperformance claim to prosper, a moving party must establish the real and positive existence of the damages caused." *Gonzalez-Camacho v. Banco Popular de Puerto Rico*, 318 F. Supp. 3d 461, 482 (D.P.R. 2018), *reconsideration denied* (Aug. 1, 2018) (internal quotation marks and citations omitted). That is, "an action for damages for breach of contract ... only lies when the damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed

upon, which damage would not occur without the existence of a contract." *Colon v. Blades*, 717 F. Supp. 2d 175, 185 (D.P.R. 2010) (quoting *Ramos Lozada v. Orientalist Rattan Furniture Inc.,* 130 D.P.R. 712, 727 (1992); *Soc. De Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508 (1998) ("[W]hen the breach of a contractual obligation causes harm to any of the contracting parties, an action for damages for breach of contract lies."). It therefore follows that the plaintiff's damages are an indispensable element of the cause of action for breach of contract. *See R & T Roofing Contractor, Corp. v. Fusco Corp.,* 265 F. Supp. 3d 145, 154 (D.P.R. 2017) (noting that under Puerto Rico law the elements of a cause of action for breach of contract under Puerto Rico are "(1) a valid contract, (2) a breach by one of the parties to the contract; and (3) *resulting damages*.") (citing P.R. Laws Ann. Tit 31, § 3018); *Mega Media Holdings, Inc. v. Aerco Broad. Corp.*, 852 F. Supp. 2d 189, 199 (D.P.R. 2012) (same).

Plaintiff's breach of contract claim fails for two key reasons. First, Plaintiff's allegations as to breach of contract are based on statements and the conduct of settlement negotiations. As explained above, those allegations must be stricken.

Second, even if Plaintiff's claim somehow survived the striking of the allegations based on settlement communications, the breach of contract claim would still fail because Plaintiff did not allege **any** facts establishing **any** damages suffered because of the alleged breach. And, in fact, given that Plaintiff has not even alleged that it is operating in the same market as CC1, any such alleged breach would not prejudice it. As such, Plaintiff's breach of contract claim fails a matter of law.

### B. Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Fails as Matter of Law

Puerto Rico law imposes a duty of good faith performance on contracting parties to emphasize faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 108 (1st Cir. 2001). To establish a breach of good faith in the context of contract performance, the

Puerto Rico Supreme Court has made clear that a party "would have to demonstrate the intentional fault or bad faith of the person to whom it is imputed, given that good faith is presumed." *P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc.*, 952 F. Supp. 84, 93 (D.P.R. 1997) (quoting *Citibank v. Dependable*, 121 D.P.R. 503, 519 (1987)); *see Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 29 (1st Cir. 2009) (*citing Canales v. Pan Am.*, 112 P.R. Dec. 329 (1982)). If the party succeeds in proving bad faith ("dolo"), it may recover actual damages that resulted from the breach of the contract, not just those foreseeable. P.R. Laws Ann. tit. § 3024.

Plaintiff's fourth cause of action for breach of the covenant of good faith and fair dealing fails for two reasons. First, as with the breach of contract claim, Plaintiff's allegations as to breach of the covenant of good faith and fair dealing are based on statements and the conduct of settlement negotiations. As explained above, those allegations mustbe stricken.

Second, a breach of this implied duty of good faith does not create an independent cause of action. It merely allows a plaintiff to recover actual damages that resulted from the breach of the contract. *See Oriental Fin. Grp., Inc. v. Fed. Ins. Co.*, 598 F. Supp. 2d 199, 206 n. 6 (D.P.R. 2008) (noting that "a claim for 'dolo' [(bad faith)] is not a separate 'cause of action', it is contingent upon the breach of contract claim."). Therefore, given that Plaintiff's breach of contract claim fails a matter of law, its good faith and fair dealing claim should be dismissed as well.

## IV.    CONCLUSION

For all the foregoing reasons, CC1 respectfully request that the Court strike Paragraphs 27-33, 35, 45, 55, 59, 67 of the Complaint, as well as Exhibits F, G, and H to the Complaint, and dismiss all causes of action in Plaintiff's Complaint.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of September 2018.

It is hereby certified that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico, 00918
Tel: (787) 274-1212
Fax: (787) 274-1470


**NÉSTOR M. MÉNDEZ GÓMEZ**
USDC-PR Bar No. 118409
nmendez@pmalaw.com


*S/ María Dolores Trelles Hernández*
María Dolores Trelles Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com


*S/ Mariola Abreu Acevedo*
María Dolores Trelles Hernández
USDC-PR Bar No. 304903
mabreu@pmalaw.com