IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NIAGARA BOTTLING, LLC,

  Plaintiff,

v.

CCI LIMITED PARTNERSHIP D/B/A
COCA-COLA PUETO RICO BOTTLERS,

  Defendant.

Civil No. 18-1414 (DRD)

## OPINION AND ORDER

Pending before the Court is Defendant CC1 Limited Partnership d/b/a Coca-Cola Puerto Rico Bottlers' ("Defendant") *Motion to Dismiss* and *Motion to Strike*. *See* Docket Nos. 12 and 25. Plaintiff Niagara Bottling, LLC ("Plaintiff") opposed. *See* Docket No. 38. Defendant replied to the opposition. *See* Docket No. 43. Plaintiff, then, sur-replied. *See* Docket No. 48. For the reasons stated herein, the Court **DENIES** Defendant's *Motion to Dismiss*.

### I.    PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND

Plaintiff is the owner of federal trademark registrations for Eco-Air Bottle word mark in International Class 32 and Eco-Air Package work mark in International Cass 16 ("collectively "Eco-Air Marks"); along with common law rights ("Composite Marks"). *See* Docket No. 15 at 4. Plaintiff alleges that in 2016, the Defendant began selling its water bottle with a "mark confusingly similar" to the one Plaintiff uses. *Id.* at 6. As a result thereof, Plaintiff sent an initial infringement letter to Defendant, demanding "that [Defendant] cease[s] and desist[s] from continuing infringing its marks." *Id.* at 8. On January 2, 2017, both parties signed a Settlement Agreement to avoid litigation. The Settlement Agreement stated Defendant would not use "[Plaintiff's] marks,

or any mark confusingly similar thereto." *Id*. They further agreed the Defendant would dispose of all "existing inventory" and not sell inventory with similar marks after October 31, 2016 ("phase-out date"). *Id*. at 9.

Now, Plaintiff contends that on June 2017, the Defendant "continued to advertise, manufacture, produce, distribute, and offer for sale in Puerto Rico Nikini Products bearing the Infringing Marks after the phase-out date. . ." *Id*. at 9. Accordingly, Plaintiff sent the Defendant a letter as a reminder of the phase-out date, for the remaining "existing inventory." *Id*. Plaintiff further forewarned the Defendant that if they did not "immediately cease and desist from continuing its deliberate infringement. . . within fourteen days. . . [Plaintiff] would be forced to seek legal action." *Id*. The Defendant replied that the "existing inventory" that was being sold was "purportedly manufactured prior to the Settlement Agreement's phase-out date." *Id*. at 10.

Plaintiff alleges the Defendant had "either actual or constructive knowledge of [Plaintiff's] ownership of rights in its federally registered Eco-Air Marks prior to its adoption and use of the Infringing Mark." *Id*. at 12. Consequently, the Defendant is incurring in a violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a) by causing "confusion, mistake, and deceit in the minds of the public by leading the public to believe that [Plaintiff] ha[d] approved, sponsored or otherwise associated itself with [Defendant's] infringing products." *Id*. at 13.

Furthermore, Plaintiff argues that the Defendant "contractually agreed that it would not manufacture, distribute, sell and/or advertise any of its infringing products after the Settlement Agreement's phase-out date." *Id*. at 14. Thus, the Defendant "materially breached the Settlement Agreement by continuing to use the Infringing Mark in the advertising of its Nikini products [and] by continuing to manufacture, distribute, and sell products bearing the Infringing Mark" *Id*. As a result thereof, the Defendant filed a *Motion to Dismiss* for failure to plead a claim upon which

2

relief can be granted. *See* Docket No. 25. A careful scrutiny of the underlying legal framework is required in order to rule upon the pending motion.

## II. STANDARD OF REVIEW FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting *Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a Plaintiff must allege enough facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]'

3

devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly*, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. 679); *see Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted);

*see Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen [] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit however, outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains enough facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id.* at 104. Second, district courts should accord "some latitude" in

cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

## III. LEGAL ANALYSIS

### A. Breach of Settlement Agreement

Under the Puerto Rico Civil Code an existing contract requires: "(1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause or obligation which may be established." P.R. Laws Ann. Tit. 31, § 3391. Additionally, the Puerto Rico Civil Code provides that a "compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." P.R. Laws Ann. Tit. 31, § 4821. Thus, "obligations arising from contracts have legal force between the contracting parties and must be filled in accordance with their stipulations." P.R. Laws Ann. Tit. 31, § 2994. The Puerto Rico Civil Code has established that if "the terms of a contract are clear and leave no doubt as to the intentions to the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. Tit. 31, § 3471.

The First Circuit affirms that "an agreement is clear when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." *Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo*, 96 F. 3d 10, 14 (1st Cir. 1996) (quoting *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir. 1995). It has further emphasized that under Puerto Rico law, extrinsic evidence is "inadmissible in the face of a clear and unambiguous contract." *Id*. at 17. Considering the facts herein, the Court notes no dispute as

to a potential validity and clarity of the Settlement Agreement. Thus, the Court finds the Settlement Agreement is a binding contract and need not to analyze extrinsic evidence.

In the case at hand, there is a potential legally binding contract because both parties agreed to the conditions established in the Settlement Agreement. *See* Docket No. 15-5. The Settlement Agreement is clear on its terms particularly in that Defendant would "refrain now and in the future from using, adopting or registering, whether as trademarks, service marks corporate names, trade names, product names. . . handles or social media account names. . .or other designations consisting of or incorporating the [Plaintiff's] Marks, or any mark confusingly similar thereto." *Id.* at 4. The unambiguous terms and conditions allow the Court to enforce the Settlement Agreement. The issue, then, becomes whether there was a breach of contract.

As previously stated, the Court determined the Amended Complaint, as drafted, clearly demonstrates the existence of a contract. In order for the Court to analyze if there is a breach of contract, a determination has to be made as to whether the conditions of the contract were infringed and, whether such infringement caused damages. Under Puerto Rico law, to properly assert a claim for a breach of contract, "a party must sufficiently allege: (1) a valid contract; (2) breach of that contract; and (3) resulting damages." *First Med. Health Plan, Inc. v. CaremarkPCS Caribbean, Inc.*, 681 F. Supp. 2d 111, 116 (D.P.R. 2010). Herein, there was a potentially binding contract as both parties agreed the Defendant would refrain from using Plaintiff's marks and from selling any "existing inventory" after the phase-out date. *See* Docket No. 15 at 8, 9. Therefore, by continuing to sell inventory after the phase-out date, Defendant could have potentially breached a Settlement Agreement that was in full force. Plaintiff need not to establish damages because according to the Settlement Agreement, Defendant agreed that "a breach. . . would give rise to irreparable harm. . . for which monetary damages would not be an adequate remedy, [Defendant]

[agreed] that in the event of a breach. . . [Plaintiff]. . . be entitled to take action in pursuit of equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available. . ." Docket No. 15-5 at 5, 6.

### B. *Trademark Infringement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

Section 43(a) of the Lanham Act provides for a cause of action for trademark infringement. *See* 15 U.S.C. § 1125(a). A defendant is in violation of the statute when the mark, as advertised, is "likely to cause confusion, or to cause mistake, or [deception]" or if "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin. . ." 15 U.S.C. § 1125(a). In order to succeed on a trademark infringement claim, a plaintiff must establish: "(1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F .3d 1, 12 (1st Cir. 2008) (citing *Borinquen Biscuit*, 443 F. 3d at 116).

The Supreme Court has established registration is not necessary for the protection of a trademark. *Two Pesos v. Taco Cabana*, 505 U.S. 763, 768 (1992). However, if the mark is registered, the first prong of a trademark infringement case is then satisfied. The First Circuit affirms that "likelihood of confusion is thus an essential element of a claim of trademark infringement" *Pignons S. A. de Mecanique de Precision Corp. v. Polaroid Corp.*, 657 F .2d 482, 487 (1st Cir. 1981)(citing *Coca-Cola v. Snow Crest Beverages, Inc.*, 162 F .2d 280, 280 (1st Cir. 1947). Therefore, the second prong becomes the most essential in order for Plaintiff to demonstrate before the Court that there is a plausible claim for relief. In the instant case, the Court finds the first prong has been satisfied by the federal trademark registration that entitles Plaintiff to the trademark rights. *See* Docket No. 15-1; Docket No.15-2; Docket No. 15-3.

The First Circuit has established eight factors that aid trial courts determine whether the likelihood of confusion exists: "(1) the similarity of the marks; (2) the similarity of goods or services; (3) the relationship between the parties' channel of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective buyers; (6) evidence of actual confusion; (7) the defendants' intent in adopting the mark; and lastly (8) the strength of the plaintiff's mark." *Pignons*, 657 F .2d at 487. The *Pignons* factors are a matter of fact and law and the Court not need to consider all the factors to make a decision; nor do all the factors need to be satisfied. The eight *Pignons* factors are meant to provide guidance to the Court in evaluating the second prong. *Astra Pharmaceutical Prods., Inc. v. Beckman Instruments, Inc*. 718 F .2d 1201, 1205 (1st Cir. 1983). Having discussed the *Pignons* factors, the Court will now apply them to the instant facts.

The first factor is the similarity of the marks. According to *Pignons*, "similarity is determined on the basis of the designation's total affect." *Pignons*, 657 F .2d at 487. Plaintiff provides a description and image of their Eco-Air Marks and alleges Defendant "adopted a design whose dominant features and overall appearance are practically identical. . . [the] mark is also placed inside a white circle with half of the circle outlines in color blue with a green leaf concavely position at the bottom of the circle." Docket No. 15 at 6. Plaintiff is establishing why the similarity of the marks could be confusing to consumers. The second *Pignons* factor is the similarity of services and customers. In the case at bar, both parties have similarities of services and customers because they target the general public in Puerto Rico and sell their product in similar ways; stores, online, among others. *Id*. The third, fourth, and fifth *Pignons* factors are the similarity of advertising channels, channels of trade, and the customer relationship between the parties' channel trade. Plaintiff alleges that both he and the Defendant "offer their goods in the same channel of trade in Puerto Rico, which includes restaurants, convenient stores, supermarkets and other retail outlets;

9

also through online marketplaces. . ." Docket No. 15 at 7. Plaintiff further argues they have been selling their product with their Eco-Air Marks long before Defendant began using the similar mark. *Id*. This factor demonstrates that Plaintiff has built recognition of their product within interstate commerce and has built a continuous relationship with its regular purchasers. The sixth *Pignons* factor is the evidence of actual confusion. In the instant case, Plaintiff has not provided the Court with any facts or allegations that can be construed as confusion. Plaintiff broadly states that a "bottled water is an inexpensive product usually produced without careful consideration or care. As such, use by [Defendant] of the Infringing Mark increases the likelihood of confusion." *Id*. Plaintiff only contends the reasons why the marks could cause confusion, but not evidence of an actual confusion that has been caused among its consumers. *Id*. The seventh *Pignons* factor is the Defendant's intent in adopting the mark. Plaintiff does not demonstrate whether they believe or have knowledge that Defendant has an intent to adopt the mark. Nevertheless, the First Circuit established "that courts should not give great weight to a finding of lack of intent in determining likelihood of confusion because the presence or absence of intent does not impact the perception of consumers whose potential confusion is at issue." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 49 (1st Cir. 1998). The mere fact that an alleged infringer "intentionally copie[d] a trademark, may be presumed that he intended to cause confusion and profit thereby." *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 57 (1st Cir. 1989). Lastly, the eighth *Pignons* factor is the strength of the Plaintiff's mark. The Court finds the strength goes back to when Plaintiff started selling the water bottle, which was in 2010. *See* Docket No. 15 at 3. Moreover, Plaintiff complies with registering the trademarks before the United States Patent Trademark Office. *See* Docket No 15-1; Docket No. 15-2; Docket No. 15-3. Thus, registration demonstrates that Plaintiff has ownership rights to the trademarks. Therefore, Plaintiff has a strong mark in the realm of selling and channels.

Accordingly, the Court finds that Plaintiff satisfies the two prongs to establish trademark infringement. However, the Court acknowledges that the issue was already discussed and agreed upon in the Settlement Agreement.

### C. Motion to Dismiss under 12(B)(6)

Pursuant to the entirety of the Amended Complaint, the Court takes the well-pleaded facts in the light most favorable to the Plaintiff and determines there is a plausible claim for relief. Plaintiff satisfies the requirements to show there is a potential breach of contract. On the face of the Amended Complaint, Plaintiff demonstrates sufficient facts as to the existence of a binding contract with the Defendant. Plaintiff also presents adequate number of facts to establish the Defendant may have breached the Settlement Agreement. Most critical, Plaintiff argues the Settlement Agreement established that a breach of the contract would give rise to irreparable harm. Lastly, Plaintiff has properly pled factual allegations to establish there is a potential trademark infringement by satisfying the two prongs. Therefore, the Court finds Plaintiff has alleged sufficient facts to show a plausible entitlement to relief.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motions *to Dismiss* (Docket No. 25) is hereby **DENIED**. Having the Court ruled upon the *Motion to Dismiss* without the need to consider the documents that are subject of Defendant's *Motion to Strike*, the *Motion to Strike* is **DENIED** as moot.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of May 2019.

*S/ Daniel R. Dominguez*
Daniel R. Domínguez
United States District Judge